**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| April Denise West,<br><br>Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-12-01542-PHX-NVW<br><br>**ORDER** |

Plaintiff April Denise West seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security Administration ("the Commissioner"), which denied her disability insurance benefits under sections 216(i) and 223(d) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.     BACKGROUND**

  **A.     Factual Background**

West was born in April 1977. She has a high school education and is able to communicate in English. She worked as a waitress before February 2, 2008. She moved to Arizona in April 2008. In May 2008, she worked one day as a convenience store cashier, but quit due to back pain and swollen ankles. She began having migraine headaches in 2004 and has been diagnosed as having degenerative disc disease in her

back and Bell's palsy. On February 1, 2010, West had gastric bypass surgery. As of May 10, 2010, she had lost 45 pounds.

### B. Procedural History

On July 3, 2008, West applied for disability insurance benefits alleging disability beginning February 2, 2008. On June 9, 2010, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified.

On October 21, 2010, the ALJ issued a decision that West was not disabled within the meaning of the Social Security Act. The Appeals Council denied West's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On July 17, 2012, West sought review by the Court.

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

- 2 -

### III.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### IV.   ANALYSIS

At step one, the ALJ found that West did not engage in substantial gainful activity during the period from her alleged onset date of February 2, 2008, through her date last insured of September 30, 2010. At step two, the ALJ found that, through the date last insured, West had the following severe impairments: cervical degenerative disc disease

with spondylosis, lumbar degenerative disc disease with central herniated disc at L5-S1, morbid obesity, rebound headaches/migraines, and Bells palsy. At step three, the ALJ determined that, through the date last insured, West did not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ determined that through the date last insured West:

> had the residual functional capacity to perform lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking at least 4 hours in an 8-hour workday; sitting about 6 hours in an 8-hour workday, with normal breaks; unlimited pushing and pulling; climbing ramps and stairs frequently and ladders, ropes and scaffolds never; balancing and stooping occasionally; and kneeling, crouching and crawling frequently. The claimant is to avoid concentrated exposure to vibration and hazards (heights, machinery).

The ALJ also found that, through the date last insured, West was unable to perform any past relevant work. At step five, the ALJ concluded that, through the date last insured, considering West's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could have performed.

### A. The ALJ Did Not Err in Weighing Medical Source Evidence.

#### 1. Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.*

Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* Moreover, the Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33.

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Id.* at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631.

### 2. Weighing the Opinions of State Agency Non-Examining Physicians Against the Opinion of a State Agency Examining Physician

West contends that the ALJ erred by giving greater weight to the opinions of non-examining state agency physicians Katherine Farrell, M.D., and Ernest Griffith, M.D., than to the opinion of examining physician Paul Drinkwater, M.D. The ALJ is required

to give specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion and clear and convincing reasons for rejecting an examining physician's uncontradicted opinion.

West alleges disability beginning February 2, 2008.  In June 2008, her x-rays showed mild degenerative changes of the cervical spine, slight curvature and mild degenerative changes of the thoracic spine, and mild disc space narrowing of the lumbar spine.  In August 2008, a lumbar MRI scan showed "a central disc extrusion at L5-S1, which mildly narrows the anterior canal, approximates but does not definitely contact descending nerve roots."  In February 2009, a cervical MRI scan revealed degenerative spondylosis, most pronounced at C5-6, effacing the thecal sac and flattening the spinal cord without softening it, with mild left-sided foraminal narrowing.  At C6-7, the scan showed mild spinal canal narrowing with effacement of the thecal sac and mild right-sided neural foraminal narrowing.  At C7-T1, the scan showed central disk changes causing effacement of the thecal sac and indentation of the spinal cord centrally causing mild spinal canal narrowing.

In May 2009, Dr. Drinkwater examined West and reviewed her medical records.  Among other things, Dr. Drinkwater noted that she "alleges neck pain and has a very abnormal MRI with some findings consistent with cervical radiculopathy despite gross giving way in her upper extremities" and "low back pain, which does not have radicular features."  Dr. Drinkwater completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) on which he expressed numerous conclusions, but he did not identify any specific findings on which he had based his conclusions as the form requested.  He merely stated, "This is based on my physical exam, medical judgment, and imaging studies."  On the form, he opined that West's maximum capacity to lift and/or carry occasionally or frequently is less than 10 pounds.  He also opined that West could never stoop, kneel, crouch, crawl, or climb ladder/rope/scaffolds and could occasionally

climb ramp/stairs, reach, handle, finger, and feel. He opined that in an 8-hour day she can stand and/or walk 2 hours with a change in position and sit 4 hours with a change in position, *i.e.*, West cannot work an 8-hour day.

The ALJ found that West has cervical degenerative disc disease with spondylosis and lumbar degenerative disc disease with central herniated disc at L5-S1. However, she gave "little weight" to Dr. Drinkwater's opinion because it is not supported by the objective evidence. She gave the following reasons, which are specific, legitimate, clear, convincing, and supported by substantial evidence in the record, for rejecting the examining physician's opinion. First, West's x-rays showed only slight degenerative disc change and possible mild curvature in the cervical spine, slight curvature and mild degenerative disc change in the thoracic spine, and slight curvature and probable congenital transitional lumbosacral vertebral decrease in disc space at the lumbosacral junction in the lumbar spine. Second, Dr. Drinkwater's characterization of the MRI as "very abnormal" is not supported by the record. Third, no objective evidence in the record indicates radiculopathy, only West's complaint of symptoms. Fourth, the limitations imposed by Dr. Drinkwater are too restrictive for the findings he made in his assessment. Fifth, Dr. Drinkwater's opinion is without substantial support from the other evidence of record.

The ALJ gave substantial weight to the opinion of Katherine Farrell, M.D., who performed a residual functional capacity assessment for the state agency in October 2008 and did not examine West. In the assessment, Dr. Farrell stated specific facts upon which her conclusions were based, including that West "has no evidence of neural impingement and walks without assistive devices." Dr. Farrell opined that West could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk at least 4 hours in an 8-hour workday; and sit with normal breaks for a total of about 6 hours in an 8-hour workday. The ALJ explained that she gave substantial weight to Dr. Farrell's assessment

because it is consistent with the objective medical evidence. Because Dr. Farrell's opinion is consistent with independent clinical findings or other evidence in the record, the ALJ was permitted to consider it as substantial evidence contradicting Dr. Drinkwater's opinion. However, even if it is not considered substantial evidence, the ALJ's reasons are sufficient to meet the higher standard for rejecting an examining physician's uncontradicted opinion.

In May 2009, Ernest Griffith, M.D., also prepared a physical residual functional capacity assessment for the state agency and stated specific facts upon which his conclusions were based. He opined that West can lift and/or carry 10 pounds occasionally and frequently; stand and/or walk 4 hours in an 8-hour workday; and sit about 6 hours in an 8-hour workday. The ALJ did not assign specific weight to Dr. Griffith's assessment, but rather stated that his objective findings support finding West's residual functional capacity to do sedentary work within the ALJ's established limitations.

Regardless of whether the non-examining state agency physicians' assessments are considered substantial evidence because they are consistent with independent clinical findings or other evidence in the record, the ALJ did not err in weighing medical source evidence because she provided specific, legitimate, clear, and convincing reasons, supported by substantial evidence in the record, for giving Dr. Drinkwater's opinion little weight.

**B.     The ALJ Did Not Err in Evaluating West's Credibility.**

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis:  (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the

- 8 -

severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

First, the ALJ found that West's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Second, the ALJ found West's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment.

At the administrative hearing on June 9, 2010, West testified that she had tried to work at a convenience store in April 2008, but was unable to do so because standing for so long hurt her back. She also testified that Bell's palsy affects her vision in one eye and causes her hearing to "go in and out." She further testified that she continues to get migraine headaches that may last 2-3 hours or 2-3 days and that she gets them once or twice a week. She described having constant neck pain, which feels like being poked with needles or knives, burns, travels into her arms, and causes her hands to become numb. She said her neck pain is made worse by sitting or standing for a really long time, reaching, turning her head to the side, reaching up, and physical therapy. She also said pain medications "tend to help some." She testified that her low back pain burns and she feels like she is being squeezed; the pain travels from her low back up to her neck and outward to her hips and right leg. She said that about 3-4 times a week her right leg will go numb, usually when she is lying down. She testified that her back pain is made worse by standing, walking, or sitting for a long time and that after sitting for 35-40 minutes, she needs to lie down or stand up and walk around. She testified that out of a 24-hour period, she usually lies down about 17-18 hours and that she lies down about 6½ - 7 hours between 9:00 a.m. and 5:00 p.m. She testified that she feels depressed because of the pain and not being able to do activities like she used to and that she no longer can concentrate enough to read a book or follow a movie or television program. She said she

does not cook, clean, shop, or do laundry.  She admitted that she had provided incomplete information to Dr. Philip Barry, a psychologist who evaluated her to determine her appropriateness for bariatric surgery, because she wanted to be able to have the surgery.[1]

The ALJ's hearing decision states numerous specific, clear, and convincing reasons for rejecting West's testimony about the severity of her symptoms.  The decision cites medical records indicating that medication and treatment have been successful in controlling West's symptoms, evidence that West was making progress with weight loss following gastric bypass surgery, and evidence showing that she failed to follow-up on recommendations made by her treating doctors, which suggest that her symptoms may not have been as serious as alleged.  It also cites her neurologist's advice to stop taking over-the-counter pain medications that likely were causing her rebound migraine headaches.  Further, the decision identifies evidence that West was less than fully cooperative or put forth less than maximal effort during examinations and cites evidence that West has made inconsistent statements to multiple sources regarding her past work, her reasons for discontinuing work, her children, her marital status, family history, and church attendance.  The ALJ concluded:  "Although the inconsistent information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable."

---

[1] In November 2009, Dr. Barry reported that West said she had not driven for four years because of chronic back pain and the cognitive effects of her pain medication; she told the ALJ that her driver's license had been suspended because of traffic violations, which was another reason she does not drive.  Dr. Barry also reported that West denied having any significant psychological problems; she told the ALJ that she is depressed and previously took medication for depression for 4 months.  Dr. Barry reported that West said she had not worked outside the home "for the past 4 years, choosing instead to stay home with her two daughters, ages 10 and 7."  West told the ALJ she did not say that to Dr. Barry, but rather told him that her two daughters did not live with her.  Dr. Barry's testing showed "no indication of significant depression or psychosis."

Thus, the ALJ did not err by finding West's statements regarding the intensity, persistence, and limiting effects of her symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 25th day of February, 2013.

_____
Neil V. Wake
United States District Judge